UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| CHRYSTAL L. GREENWELL, | ) |   |
|---|---|---|
|   | ) |   |
| Plaintiff, | ) |   |
|   | ) |   |
| v. | ) | CAUSE NO.: 3:08-CV-556-TS |
|   | ) |   |
| ZIMMER, INC., | ) |   |
|   | ) |   |
| Defendant. | ) |   |

## OPINION and ORDER

On December 15, 2008, the Plaintiff, Chrystal L. Greenwell, filed an Amended Complaint [DE 3] against the Defendant, Zimmer, Inc., alleging that the Defendant violated Title VII of the Civil Rights Act of 1964 (Title VII) when it decided not to hire her on a full-time basis because she was pregnant. After a period of discovery, the Defendant filed its Motion for Summary Judgment [DE 25] along with a memorandum in support on December 1, 2009. The Plaintiff filed her Memorandum in Re[sp]onse [DE 29] on January 11, 2010. The Defendant filed its Reply [DE 33] on February 1, and the Motion is now ripe for ruling.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." If appropriate, summary judgment should be entered against a party who fails to so respond. Fed. R. Civ. P. 56(e)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that a court should enter summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609. However, the court is not required to draw every conceivable inference from the record—only reasonable ones. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989).

The rule governing summary judgment requires that a supporting or opposing affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). On a motion for summary judgment, a court must not consider parts of an affidavit that fail to comply with Rule 56(e). *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of*

*Madison*, 832 F.2d 965, 970 (7th Cir. 1987). The following statements do not comply and should be disregarded: (1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture. *Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (quotation marks and citations omitted). Although "self-serving statements in affidavits without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record [can] defeat summary judgment," and the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted). If it meets these requirements, "a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003); *see also U.S. Gypsum Co. v. LaFarge N. A., Inc.*, 508 F. Supp. 2d 601, 626 (N.D. Ill. 2007) ("Most affidavits and much testimony are self-serving. Like any other testimony, self-serving testimony is to be accepted on summary judgment as long as it is based on personal knowledge, sufficiently specific, not disputed by contrary evidence of the nonmovant, and in compliance with any other evidentiary criteria applicable to the particular testimony."). Additionally, "summary judgment cannot be used to resolve swearing contests between litigants." *Payne*, 337 F.3d at 770 (citing cases).

**STATEMENT OF FACTS**

In determining what facts this Court should rely upon in ruling on the Defendants' Motion for Summary Judgment, the Court considers the requirements of Northern District of Indiana Local Rule 56.1. This Rule provides that the party responding to a motion for summary judgment must include a statement of genuine issues that sets forth, together with appropriate citations to designated evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated.. Failure to do so results in the Court accepting as true all properly supported facts presented in the moving party's statement of material facts. N.D. Ind. L.R. 56.1(b). This Court has reviewed the Defendant's Statement of Material Facts Not in Dispute and finds that they are adequately supported with appropriate citations to admissible evidence. The Plaintiff, however, has failed to conform with Rule 56.1's directive to include a statement of genuine issues in her response brief, and has not included any facts section at all. Rather, she has interwoven facts, most without citation to the record, throughout her unclearly delineated Introduction, Standard of Review, and Analysis sections. To the extent that they are uncontroverted, the facts alleged by the Defendant will be accepted as true. To the extent that the Court can find supported contradictory facts in the Plaintiff's labyrynthine Response, they will be construed in a light most favorable to the Plaintiff. The relevant facts are as follows:

Zimmer, Inc. (Zimmer) is a for-profit corporation existing under the laws of the state of Delaware, and doing business in Warsaw, Indiana.[1] From October 31, 2007, to December 4, 2007,

---

[1] The Plaintiff's briefing dedicates many pages of facts and analysis to a Deferred Prosecution Agreement between the Government and Zimmer relating to a criminal complaint that had been filed against Zimmer. The Agreement mandated that the Plaintiff's position be created, and that the position not be subordinate to Zimmer's financial department. However, as the agreement says nothing about hiring procedures for the Plaintiff's position, the Court does not find it relevant to the summary judgment analysis.

the Plaintiff was employed by Kelly Services, a temporary staffing agency, and worked at Zimmer performing the job of "Coordinator, Compliance." The position involved reviewing healthcare provider agreements, entering data from those agreements into a database, checking and distributing mail, and coding files. The Plaintiff did not arrive at Zimmer through Kelly Services, however. She applied directly to Zimmer after finding the job opening online, and was directed by Zimmer to initially work through Kelly so that she could start working before her full-time Zimmer employment was approved. The Plaintiff started work on an expedited track—she was asked to have a drug screening done before she started work, and was told that she could be approved for permanent employment within a week or two. The Plaintiff was also introduced to her coworkers as the permanent compliance coordinator.

At all times relevant, Alison Bloodhart was the Human Resources Manager at Zimmer. When the Plaintiff began at Zimmer, Bloodhart prepared a recommendation packet for the Plaintiff because those who had hired the Plaintiff as a temporary employee had recommended that she be hired as a regular employee. This packet included information about the Plaintiff's educational background and prior work experiences. The packet contained no information about the Plaintiff's performance during her tenure at Zimmer. Beginning on November 1, 2007, the recommendation packet was routed to the individuals at Zimmer who were required to approve the Plaintiff's hiring. These individuals were Bloodhart, Carrie Brissette, the Plaintiff's immediate supervisor, Brad Kendall, who worked in the compliance department with the Plaintiff, Sherri Milton, the Director of Compliance, Laura O'Donnell, the Chief Compliance Officer, and several persons from Zimmer's financial department including Derek Davis, Zimmer's Chief Accounting Officer. The hiring approval process was such that if an individual on the routing list approved

the recommendation to hire the Plaintiff, he or she indicated approval by signing his or her name on the Personnel Offer Authorization form and then forwarded the packet on to the next individual on the list.

The packet indicates that every person who either directly worked with or supervised the Plaintiff had approved her hiring by November 5, less than a week after the Plaintiff had started working at Zimmer. On or about November 9, while the packet approval process was ongoing, the Plaintiff met with Brissette and informed her that she was pregnant. The Plaintiff avers that the attitudes and actions of her coworkers changed after they learned of her pregnancy. Brissette began reprimanding the Plaintiff for minor errors in work. Bloodhart, who had once expressed optimism that the Plaintiff's packet would be quickly approved, now indicated that it was unknown when the paperwork would be approved. Bloodhart also advised the Plaintiff that she should consider Medicaid to cover her pregnancy—this suggested to the Plaintiff that she would not be approved for a full-time position, as such a position would presumably include health insurance benefits. Some time later, after November 13[2], Davis reviewed the Plaintiff's application packet. His deposition indicates that he thought that the Plaintiff's work experience and education were not sufficiently strong to warrant her hiring. On December 4, Bloodhart and Brissette met with the Plaintiff to inform her of the decision that her temporary assignment was ending.[3]

---

[2] While, the Defendant's Motion indicates that Davis reviewed the packet "sometime after November 13," (Mot. for Summary Judgment at 6) the Plaintiff was not advised that she would not be permanently retained until December 4.

[3] The Defendant's briefing makes much of the fact that Brisette had been unhappy with aspects of the Plaintiff's work performance, and that the two had spoken about this dissatisfaction. However, the Defendant does not allege that Davis, the ultimate decisionmaker, knew of these work deficiencies. Therefore the Court does not find that work performance evidence persuasive in this summary judgment analysis.

In making his decision, Davis admits that he did not know the job description for Coordinator, Compliance. Nor did he know whether the Plaintiff was being hired to replace someone else, or was a totally new hire. Davis also had no details of the Plaintiff's job performance, did not call any of the Plaintiff's references, and had never met the Plaintiff in person. Davis simply states that he did not sign off on the hiring because the Plaintiff did not have the requisite qualifications.

## ANALYSIS

The Plaintiff's Complaint asserts a claim under Title VII, claiming that the Plaintiff was not hired on an permanent basis because of her gender and pregnancy. Title VII makes it an unlawful employment practice for an employer to "discharge any individual" or "otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act (PDA) amended Title VII to define discrimination "because of sex" or "on the basis of sex" to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The statute further states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id.* The PDA "brought discrimination based on pregnancy within a woman's protections against sex discrimination." *Hunt-Golliday v. Metro. Water Reclamation Dist.,* 104 F.3d 1004, 1010 (7th Cir. 1997).

Pregnancy discrimination claims are analyzed like any other sex discrimination claim. *Hall*

*v. Nalco Co.*, 534 F.3d 644, 647 (7th Cir. 2008). A plaintiff may prove a pregnancy discrimination claim through either the direct method or the indirect method of proof. *Griffin v. Sisters of St. Francis, Inc.,* 489 F.3d 838, 844 (7th Cir. 2007) (per curiam); *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994). With the direct method, a plaintiff may prove discrimination by showing an admission of discriminatory animus or by constructing a "convincing mosaic" of circumstantial evidence that allows a jury to infer intentional discrimination. *Phelan v. Cook County,* 463 F.3d 773, 779 (7th Cir. 2006). Three types of circumstantial evidence can create this proof. *Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 720 (7th Cir. 2008); *Troupe,* 20 F.3d at 736. First, a plaintiff may bring direct evidence by way of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *Petts*, 534 F.3d at 721; *Troupe,* 20 F.3d at 736. Second, a plaintiff may have evidence (whether or not rigorously statistical) demonstrating that similarly situated employees outside the plaintiff's protected class received systematically better treatment. *Petts*, 534 F.3d at 721; *Troupe,* 20 F.3d at 736. Third, a plaintiff might show that she was qualified for the job but was passed over for or replaced by a similarly situated person not in the protected class, and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *Petts*, 534 F.3d at 721; *Troupe,* 20 F.3d at 736. Regardless of the category of circumstantial evidence brought forward by a plaintiff, the evidence brought forward must point directly to a discriminatory reason for the employer's action. *Petts*, 534 F.3d at 720.

With the indirect method, a plaintiff must come forward with evidence (1) that she was pregnant and the employer knew she was pregnant; (2) that she was performing her duties

satisfactorily; (3) that she suffered an adverse employment action (such as employment termination); and (4) that similarly situated employees not in the protected class were treated more favorably. *Griffin,* 489 F.3d at 844; *Venturelli v. ARC Cmty. Servs., Inc.,* 350 F.3d 592, 602 (7th Cir. 2003); *Clay v. Holy Cross Hosp.,* 253 F.3d 1000, 1005 (7th Cir. 2001). If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. *Griffin*, 489 F.3d at 844; *Venturelli,* 350 F.3d at 602. Then, if the defendant meets its burden of production, the plaintiff must present competent evidence to support an inference that the defendant's proffered nondiscriminatory explanation was pretextual for intentional discrimination. *Griffin*, 489 F.3d at 844; *Venturelli,* 350 F.3d at 602. The ultimate burden to prove intentional discrimination remains with the plaintiff. *Clay*, 253 F.3d at 1005.

The Court will analyze this case under both methods of proof. However, the Court must first note the vastly different perspectives offered by the parties. If one believes the Plaintiff, she was not offered a full-time position because of her recently announced pregnancy. However, if one believes the perspective offered by the Defendant, a decisionmaker who was not aware of the Plaintiff's pregnancy vetoed her application because of her inadequate qualifications. Both parties have come forward with evidence (a significant portion of which is contrasting affidavit testimony) to support their respective perspectives, and several disputed matters (e.g., whether Davis knew of the Plaintiff's pregnancy, whether the Plaintiff's coworkers treated her differently after she announced her pregnancy, and whether she was introduced as the permanent compliance coordinator) come "down to a good old-fashioned swearing contest that can be resolved only by assessing the credibility of" witnesses. *Townsend v. Fuchs*, 522 F.3d 765, 774 (7th Cir. 2008). Of course, at this stage of the litigation, the Court is not to weigh the evidence or make credibility

determinations, which "lie exclusively within the fact-finder's domain and are not appropriate . . . at the summary judgment stage." *Id.* The Court is, instead, to view the facts in the light most favorable to the Plaintiff, the non-movant, and to draw all reasonable inferences in her favor. The Court will address each method of proof, respectively.

**A.     Direct Method of Proof**

The Plaintiff claims that "[s]uspicious timing, ambiguous statements oral or written, [and] behavior toward or comments directed at [the Plaintiff] cannot be ignored." (Resp. at 4). The Court agrees.

A jury could find intentional discrimination from a convincing mosaic of circumstantial evidence in the record. The Plaintiff's affidavit and her attached recommendation packet include several alleged facts that would indicate that she would have attained full-time employment but for the disclosure of her pregnancy. The Plaintiff's credentials were impressive enough that she was asked to begin work the day after she was interviewed, and told to submit to a drug screening before she started work. She was introduced by her supervisor as the permanent compliance coordinator to others around the office. She was also told that her recommendation packet would be quickly approved. On November 8, 2007, nine days after she started working at Zimmer, the Plaintiff had not been told of any deficiencies in her job performance, and every person who had firsthand knowledge of her work quality had approved her hiring.

Not until the precise moment that the Plaintiff told her supervisor of her pregnancy did the atmosphere begin to change. The attitudes of those around her went from positive to either negative or evasive. Her supervisors no longer told her that the application process would be

completed quickly, saying instead that the situation was out of their hands. Almost a month passed before she received any information about her job status, when she learned that she would not be hired on a permanent basis.

The Defendant refutes the Plaintiff's facts with affidavit evidence that indicates that Davis, the decisionmaker, *never knew* that the Plaintiff was pregnant, which leads to the conclusion that it would have been impossible for him to have acted with discriminatory intent as to her pregnancy. However, evidence in the record interpreted in the light most favorable to the Plaintiff could convince a reasonable jury that Davis did know about the pregnancy. First, Davis and Brissette were both in the chain of people who were responsible for approving the Plaintiff's application—from there it would be logical to infer that Brissette passed her knowledge up the chain of command. After all, she learned of the pregnancy *after* she had approved the application and it was too late to act on it herself. Second, it took Davis almost a month to review the packet once it was forwarded to him, even though he stated that it took only fifteen minutes to review. Given the speed with which the job opening apparently needed to be filled, a reasonable jury could find that Davis was considering the pregnancy when deciding to terminate the Plaintiff, as opposed to just the Plaintiff's qualifications.

**B.     Indirect Method of Proof**

Alternatively, the Court finds that the Plaintiff's claim survives summary judgment under the indirect method of proof standard. Again, to make out a *prima facie* case, the Plaintiff must show: (1) that she was pregnant and the employer knew she was pregnant; (2) that she was performing her duties satisfactorily; (3) that she suffered an adverse employment action (such as

employment termination); and (4) that similarly situated employees not in the protected class were treated more favorably.

First, neither party contends that the Plaintiff was, in fact, pregnant, and the Court's reasoning for finding that Davis knew of the Plaintiff's pregnancy are addressed in the previous section. Second, there is evidence in the record to create an issue of triable fact as to whether the Plaintiff was performing her duties satisfactorily. While the Defendant produces evidence to show that Brissette had reprimanded the Plaintiff more than once about the quality about her work, the Plaintiff effectively responds in two ways. For one, she points out that Brissette approved her hiring, which would be inconsistent with unsatisfactory performance. Next, she avers that her conversations with Brissette about job performance did not occur until *after* the disclosure of the pregnancy. This creates an issue of triable fact that the job was being performed satisfactorily, and that any supposed work deficiencies were only created as a pretext for terminating the employment because of pregnancy. Regarding part three of the test, the Defendant does not dispute that the Plaintiff's termination was an adverse employment action.

Finally, the Defendant contends that the Plaintiff does not show that a similarly situated employee not in the protected class was treated more favorably, claiming that "Greenwell cannot identify a similarly-situated non-pregnant individual who was treated more favorably." (Mem. in Support at 12). However, as the Plaintiff points out, "Zimmer [eventually] hired someone for the job of compliance coordinator [who] would not get pregnant." (Resp. at 24). The Defendant's eventual hire was a man named Alan Patrick. While the Defendant takes pains to point out differences between Patrick and the Plaintiff in an attempt to prove he was not "similarly

situated,"[4] the Court finds that the similarities between the two evidence that they are "directly comparable . . . in all material respects." *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Both were hired for the same job, which involved the same training in policies and programs associated with the Compliance department, and both were temporary employees with Zimmer who were subjected to the application-approval process. For the purposes, then, of this litigation, there are no material respects in which the two differ. Finding Patrick similarly situated, the Court also finds a genuine issue of fact as to whether Patrick was treated differently. Most importantly, affidavit evidence shows that Patrick's hiring was made *without review by Davis*. That a colleague applying for the same job was not subject to the same review process is persuasive to the Court that a similarly situated person was treated differently.

Thus finding that the Plaintiff has made a *prima facie* case under the indirect method of proof, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. The Defendant meets this burden through Davis' affidavit testimony that he did not hire the Plaintiff out of concerns about her qualifications and concerns about cost to the company. The Court finds issues of triable fact as to whether Davis, the accountant, would have had legitimate reasons to not hire the Plaintiff based on a resume that is very light on relevant experience, and a company that was facing significant financial difficulties.

The analysis then shifts to whether the Plaintiff presents competent evidence to support an inference that the defendant's proffered nondiscriminatory explanation was pretextual for intentional discrimination. The Court finds that it does. Regarding the issue of cost, Davis'

---

[4] Most notably, Patrick has a bachelor's degree in business, whereas the Plaintiff's degree is not business-related.

deposition indicates that he did not know whether the job for which the Plaintiff was applying was a new position, or whether the Plaintiff was replacing another person. Davis acknowledges that this knowledge would have been central to any cost-based decision because replacing an existing worker would not have raised costs, and may even have lowered them. Alternatively, the Court finds an issue of triable fact as to whether Davis' proffered explanation of substandard qualifications was pretext. First, Davis' affidavit indicates that he was not familiar with the compliance coordinator job description. It therefore seems unlikely that he could have judged whether the Plaintiff, or any person, would have been qualified for the job. Second, Davis would have known that all of the Plaintiff's direct supervisors had approved her application. As the Plaintiff would not have reported to the accounting department at all, the other approvals also create an issue of fact as to whether this justification was mere pretext.

Therefore the Court finds that the Plaintiff's claims survive summary judgment under the indirect method of proof. This provides an independent reason, apart from the direct method of proof, to deny the Defendant's Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment [DE 25] is DENIED.

SO ORDERED on March 26, 2010.

    s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT  
FORT WAYNE DIVISION